**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| USCO S.P.A., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:14-cv-02590-JPM-tmp |
| VALUEPART, INC., ACE TRACK | ) | |
| CO., LTD., and REONE TRACK | ) | |
| CO., LTD., | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT VALUEPART, INC.'S MOTION TO STAY THE
CASE**

Before the Court is Defendant ValuePart, Inc.'s Motion to
Stay the Case, filed June 18, 2015. (ECF No. 89.) Plaintiff
filed a response in opposition to the motion on July 2, 2015.
(ECF No. 95.) Defendant ValuePart, Inc. replied to Plaintiff's
response on July 8, 2015. (ECF No. 96.)

For the reasons that follow, the motion to stay the instant
case is GRANTED.

**I.    BACKGROUND**

This case concerns allegations of infringement of U.S.
Patent No. 6,412,267 (the "'267 patent") asserted by Plaintiff
USCO S.p.A. ("USCO") against Defendants ValuePart, Inc. ("VPI"),
ACE Track Co., Ltd. ("ACE Track"), and REONE Track Co., Ltd.
("REONE Track") (collectively "the named Defendants").

## A.   Factual Background

"Plaintiff USCO is a joint stock company established under the laws of Italy with its principal place of business in Modena, Italy." (Compl. ¶ 5, ECF No. 1.)  USCO sells and uses split master links and lubricated track assemblies that incorporate split master links, and is the owner of the '267 patent. (Id. ¶¶ 2, 5.)

The '267 patent protects a "method of manufacturing an openable link of a track." ('267 patent at 1, ECF No. 1-3 at PageID 44.)  USCO alleges that Defendant VPI has infringed and continues to infringe the '267 patent by "import[ing], offer[ing] to sell, sell[ing], or us[ing] products which are made by the claimed methods of the '267 Patent within the United States, the State of Tennessee, and this district, thereby causing USCO to continue to suffer severe and irreparable harm." (Compl. ¶ 21.)

Relevant to the instant Motion, ACE Track filed a Chapter 15 petition for recognition of a foreign proceeding in the Bankruptcy Court for the Northern District of Illinois ("the Bankruptcy Court"). (See ECF No. 82-1.)  The Bankruptcy Court preliminarily enjoined the instant case on May 7, 2015. (Id. ¶ 3.)  On June 4, 2015, the Bankruptcy Court formally recognized ACE Track's Korean bankruptcy proceeding as a "foreign main proceeding under chapter 15 of the United States Bankruptcy

Code." (ECF No. 86-1 ¶ 1.) Additionally, the Bankruptcy Court terminated the preliminary injunction staying proceedings in the instant case. (Id. ¶ 4.) An automatic stay of proceedings as to ACE Track, however, remained in effect. See 11 U.S.C. § 362(a)(1).

### B. Procedural Background

On July 30, 2014, Plaintiff USCO filed a Complaint against the named Defendants for patent infringement. (Compl., ECF No. 1.) On October 1, 2014, Defendant VPI filed its Answer, Affirmative Defenses, Counterclaims, Cross-Claims and Jury Demand to USCO S.p.A.'s Complaint. (ECF No. 19.) USCO filed an Answer to Defendant ValuePart, Inc.'s Counterclaims on October 27, 2015. (ECF No. 30.) On January 27, 2015, VPI filed an Answer, Amended Affirmative Defenses, Counterclaims, Cross-Claims and Jury Demand to USCO S.p.A.'s Complaint. (ECF No. 49.)

On October 1, 2014, VPI filed a Motion to Transfer Venue. (ECF No. 21.) USCO responded in opposition to VPI's Motion on October 20, 2014. (ECF No. 28.) VPI filed a Reply to USCO's Response on October 28, 2014. (ECF No. 33.) On November 14, 2014, the Court denied VPI's Motion to Transfer Venue. (ECF No. 41.)

On March 16, 2015, USCO filed a Motion to Exclude the Declaration of Roger Kern Regarding Claim Construction for U.S.

3

Patent No. 6,412,267.  (ECF No. 56.)  On March 18, 2015, USCO

filed a Notice of Clarification revising certain assertions made

in the Motion to Exclude.  (ECF No. 59.)  On March 18, 2015,

USCO also filed a Consent Motion for Expedited Briefing Schedule

(ECF No. 60), which the Court granted on March 19, 2015 (ECF No.

61).  On March 20, 2015, VPI filed a Response in Opposition to

USCO's Motion to Exclude.  (ECF No. 62.)  USCO filed a reply to

VPI's response on March 26, 2015.  (ECF No. 67.)  The Court

granted USCO's motion to exclude the declaration of Roger Kern

on April 27, 2015.  (ECF No. 78.)  Pursuant to the Court's

order, the Court subsequently entered a revised declaration of

Roger Kern on May 6, 2015.  (ECF No. 79.)

On June 18, 2015, VPI filed the instant motion to stay

proceedings.  (ECF No. 89.)  USCO filed a response in opposition

to the motion on July 2, 2015.  (ECF No. 95.)  VPI replied to

USCO's response on July 8, 2015.  (ECF No. 96.)

## II.  LEGAL STANDARD

"The decision whether to grant a stay of a particular

action is within the inherent power of the Court and is

discretionary."  Ellis v. Merck & Co., Inc., No. 06-1005-T/AN,

2006 WL 448694, at *1 (W.D. Tenn. Feb. 19, 2006) (citation

omitted).  "[T]he power to stay proceedings is incidental to the

power inherent in every court to control the disposition of the

causes on its docket with economy of time and effort for itself,

4

for counsel, and for litigants." <u>Gray v. Bush</u>, 628 F.3d 779, 785 (6th Cir. 2010) (alteration in original) (quoting <u>Landis v. North American Co.</u>, 299 U.S. 248, 254 (1936)) (internal quotation marks omitted).

## A. Stay Pending Patent Reexamination

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." <u>Ethicon Inc. v. Quigg</u>, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citation omitted). In determining whether to stay litigation pending patent reexamination by the United States Patent and Trademark Office ("PTO"), courts generally consider the following three factors: "'(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" <u>Procter & Gamble Co. v. Team Techs., Inc.</u>, No. 1:12-cv-552, 2013 WL 4830950, at *2 (S.D. Ohio Sept. 10, 2013) (quoting <u>Tdata Inc. v. Aircraft Technical Publishers</u>, Nos. 2:03-cv-264, 2:04-cv-1072 (S.D. Ohio Jan. 4, 2008)).

## B. Stay Pending Bankruptcy Proceedings

Pursuant to 11 U.S.C. § 362(a)(1), the filing of a petition for protection in Bankruptcy Court operates as an automatic stay as to the bankruptcy petitioner for "the commencement or

continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." See also In re Delta Air Lines, 310 F.3d 953, 956 (6th Cir. 2002). The automatic stay "facially stays proceedings 'against the debtor' and fails to intimate, even tangentially, that the stay could be interpreted as including any defendant other than the debtor . . . ." Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196 (6th Cir. 1983).

The automatic stay under 11 U.S.C. § 362(a)(1) may, however, be extended to solvent codefendants in "'unusual circumstances.'" Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 314 (6th Cir. 2000) (quoting In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992)); see also In re Delta Air Lines, 310 F.3d at 956 ("In the absence of unusual circumstances, the automatic stay does not halt proceedings against solvent codefendants."). In order to extend the automatic stay to solvent defendants, the movant must show "[s]omething more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy . . . ." A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (internal quotation marks and citations omitted). "[U]nusual

circumstances have been found (1) when an indemnification or contribution relationship creates an identity of interests between the debtor and the non-debtor defendant; (2) when the proceeding imposes a substantial burden of discovery on the debtor; or (3) when the proceeding would have a potential preclusive effect that forces the debtor to participate in the proceeding as if the debtor were a party." In re Jefferson Cnty., Ala., 491 B.R. 277, 284 (Bankr. N.D. Ala. 2013) (citing A.H. Robins, 788 F.2d at 999; Queenie, Ltd., 321 F.3d at 287; Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.) (Johns-Manville I), 40 B.R. 219, 223–26 (S.D.N.Y. 1984); Lesser v. A-Z Assocs. (In re Lion Capital Grp.), 44 B.R. 690, 702–04 (Bankr.S.D.N.Y.1984)). Courts have issued a stay of proceedings under these circumstances

> in a variety of procedural ways. Some courts have simply determined the 11 U.S.C. § 362(a) stay applies to non-debtors based on the considerations outlined above, see, e.g., In re QA3 Fin. Corp., No. BK1 1-80297-TJM, 2011 WL 2678591 (Bankr. D. Neb. July 7, 2011); Maaco Enters., Inc. v. Corrao, No. 91-3325, 1991 WL 255132 (E.D. Pa. Nov. 25, 1991), while other courts have extended the § 362 stay using 11 U.S.C. § 105, which allows a bankruptcy court "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." See, e.g., Sudbury, Inc. v. Escott (In re Sudbury, Inc.), 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992); Johns-Manville I, 40 B.R. at 226. Still other courts have held that a movant seeking relief pursuant to § 105 must do so through an adversary proceeding. See, e.g., In re Cincom iOutsource, Inc., 398 B.R. 223, 227 (Bankr. S.D. Ohio 2008).

<u>In re Jefferson Cnty., Ala.</u>, 491 B.R. at 284 n.1.

**III. ANALYSIS**

    **A.   Stay of Proceedings Pending Reexamination of the '267 Patent**

        **1.  Prejudice**

USCO argues that it will suffer prejudice as a result of a stay of proceedings "because the average pendency of an ex parte reexamination would leave little or no life of the '267 Patent for injunctive relief." (ECF No. 95 at 5.) USCO asserts that the average time for this type of reexamination ranges from 19.70 months to 27.8 months with a median of 20.1 months. (<u>See Id.</u> at 6.) USCO further asserts that the '267 patent is set to expire "no later than February 11, 2018 . . . ." (<u>Id.</u>) USCO contends that it is seeking a permanent injunction in the instant case, which would also expire with the expiration of the '267 patent. (<u>Id.</u> at 8.) As a result, USCO argues, a stay of proceedings "would likely exhaust the life of the '267 Patent and leave USCO without this valuable and expressly requested remedy." (<u>Id.</u>)

USCO also argues that it will be put at a tactical disadvantage if these proceedings are stayed because "ACE is presently going through a bankruptcy proceeding in the Republic of Korea with no guarantee of survival." (<u>Id.</u>) "Should ACE not survive bankruptcy or lose employees and/or executives during

the pendency of the ex parte reexamination, evidence from ACE concerning shipments of accused instrumentalities to the United States and its manufacturing process(es) could be lost or difficult to obtain." (Id. at 8-9.) USCO asserts that "the Bankruptcy Code provides a mechanism for obtaining discovery from a debtor subject to the Bankruptcy Court's jurisdiction." (Id. at 9 (citing 11 U.S.C. § 1521(4); Rule 2004(a) of the Federal Bankruptcy Rules of Procedure).)

VPI argues that USCO will not be prejudiced by entry of a stay pending reexamination of the '267 patent. VPI asserts that both parties would, instead, be prejudiced by "expend[ing] resources to litigate claims that, statistically, are likely to be invalidated or narrowed during reexamination." (ECF No. 89-1 at 3.) VPI contends that failure to stay proceedings at this juncture would likely result in duplicative "fact and expert discovery efforts" and "pre-trial and trial practice." (Id.)

VPI further asserts that the instant case would not be unduly delayed. VPI states that the average time required for reexamination, including appeals to the PTAB and the Federal Circuit, is 20 months. (ECF No. 96 at PageID 2873-74.) VPI avers that "any delays in the prosecution of the reexamination (i.e., requests for extensions of time) are solely in USCO's control," because patent reexamination is an ex parte proceeding

in which the petitioner is not allowed to participate.  (Id. at
2874.)

VPI further argues that USCO would not be prejudiced
because monetary damages would adequately compensate USCO for
any harm suffered.  (ECF No. 89-1 at 4-5.)  VPI avers that the
fact that "USCO did not seek preliminary injunctive relief [is]
a tacit admission that it does not face irreparable
harm . . . ."  (Id. at 5 (citing Insituform Techs., Inc. v.
Liqui-Force Servs. (USA), 2009 U.S. Dist. LEXIS 44116, at *7
(E.D. Mich. May 26, 2009); SKF Condition Monitoring, Inc. v. SAT
Corp., 88 USPQ 2d 1038, 2008 U.S. Dist. LEXIS 24310, at *19
(S.D. Cal. Feb. 26, 2008)).)

With regard to the availability of discovery through the
Bankruptcy Court, VPI argues that "to obtain such discovery
could take time and cause further delays."  (ECF No. 96 at
PageID 2877.)  VPI contends that discovery pursuant to 11 U.S.C.
§ 1521(a)(4) is only available upon request of the "foreign
representative" of the debtor, and neither VPI nor USCO are ACE
Track's foreign representative.  (ECF No. 96 at PageID 2877.)
Additionally, VPI asserts, Rule 2004(a) is not an avenue for
"discovery against a debtor in litigation outside of the
bankruptcy proceeding."  (ECF No. 96 at PageID 2877 (citing In
re Washington Mut., Inc., 408 B.R. 45, 50 (Bankr. D. Del.
2009)).)

Although USCO will suffer some prejudice as a result of the imposition of a stay of proceedings, that prejudice is not "undue" in relation to the potential for substantial expenditure on duplicative procedures subsequent to the conclusion of the reexamination and appeals process. USCO's primary argument is that the delay would be significant given current cycle times for patent reexamination and appeals, but delay alone is insufficient to establish undue prejudice as a result of a stay pending reexamination. Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc., No. 4:08CV589, 2010 WL 3239001, at *2 (N.D. Ohio Aug. 16, 2010); see AngleFix, Tech, LLC. v. Smith & Nephew, Inc., No. 2:13-cv-02281-JPM-tmp (W.D. Tenn. filed May 6, 2013), ECF No. 53 at 4.

Of significant concern to the Court is the expenditure of resources on duplicative proceedings should the Court not impose a stay in the instant case. In Gould v. Control Laser Corporation, the Court of Appeals explained,

> Early versions of what became the reexamination statute, 35 U.S.C. §§ 301–307 (Supp. V 1981), expressly provided for a stay of court proceedings during reexamination. S. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. 5075, 96th Cong., 1st Sess. § 310 (1979); S. 2446, 96th Cong., 2d Sess. § 310 (1980). An express provision was deemed unnecessary, however, as explained in the House report:
>
>> The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent

11

> costly pretrial maneuvering which attempts to
> circumvent the reexamination procedure. It is
> anticipated that these measures provide a useful
> and necessary alternative for challengers and for
> patent owners to test the validity of United
> States patents in an efficient and relatively
> inexpensive manner. (emphasis added).

705 F.2d 1340, 1342 (Fed. Cir. 1983). The potential for "costly

pretrial maneuvering" and significant expenditure of resources

on duplicative proceedings exists in the instant case. Should

the PTO amend any of the '267 patent's claims that are asserted

in the present case, the Court would likely be compelled to

reopen claim construction and allow the parties to relitigate

invalidity, noninfringement, and possibly the scope of damages

as to the amended claims. Moreover, the expenditure of

resources on litigation with regard to any cancelled claims

would be completely squandered.

With regard to ACE Track's bankruptcy proceedings, USCO's

concern that ACE Track may not survive bankruptcy is unsupported

by the record. Approval of a debtor's reorganization plan may

serve as evidence that a successful reorganization is likely.

See In re Baldwin-United Corp., 57 B.R. 759, 768 (S.D. Ohio

1985) (finding that the bankruptcy court's approval of the

debtor's reorganization plan provided "ample support for [the]

conclusion that there was a substantial likelihood of a

successful reorganization and that it could be effected in the

near future" (internal quotation marks omitted)). In the

instant case, ACE Track's rehabilitation plan was approved by the Korean Bankruptcy Court on June 1, 2015. (ECF No. 96-2.) Moreover, there is no indication that a bona fide reorganization is unfeasible in this case. See In re Landmark Air Fund II, 19 B.R. 556, 560 (Bankr. N.D. Ohio 1982) (denying a stay of proceedings because "[f]rom the evidence adduced thus far, it is apparent to this Court that no bona fide reorganization is intended or feasible in this case. The only business of the partnership is the leasing of the Cessna aircraft, its only major asset.").

Additionally, the mechanisms for obtaining discovery from ACE Track suggested by USCO do not apply to the instant litigation. VPI correctly points out that discovery pursuant to 11 U.S.C. § 1521(a)(4) can only be obtained in the bankruptcy proceedings by request of the debtor's foreign representative. Similarly, discovery pursuant to Rule 2004(a) is only available in the bankruptcy proceeding and cannot be used "where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee." In re Washington Mut., Inc., 408 B.R. 45, 50 (Bankr. D. Del. 2009). Given the automatic stay that exists as to ACE Track in the instant case, USCO has not adequately explained how it could obtain discovery from ACE Track in these proceedings should the Court rule in its favor.

Although a delay of 20-27 months in the instant proceedings is not insignificant, the delay is not overly burdensome when compared to the potential for substantial expenditure on duplicative proceedings absent a stay of proceedings. Accordingly, the Court finds that this factor does not weigh in favor of a denial of a stay of proceedings.

## 2.    Simplification of the Issues

VPI argues that reexamination of the '267 patent will result in simplification of the issues in the instant case.  VPI asserts that 78% of ex parte reexaminations at the PTO have resulted in the cancellation or modification of patent claims. (ECF No. 89-1 at 6 (citing ECF No. 89-6 at PageID 2667).)  VPI further asserts that "the USPTO cited six prior art references that, alone or in combination with another reference, raised a substantial new question of patentability" as to multiple claims of the '267 patent.  (Id. at 7.)

USCO argues that the reexamination may complicate, rather than simplify, the issues in this case.  USCO asserts that the likelihood that the reexamined patent claims will be modified or cancelled should be analyzed on a case-by-case basis.  (ECF No. 95 at 9 (citing Parallel Networks, LLC v. Microsoft Corp., No. 2:09-CV-172, 2010 U.S. Dist. LEXIS 145954, at *7-*8 (E.D. Tex. May 10, 2010)).)  In support of its argument, USCO contends that "ex parte reexamination does not create the estoppel of inter

14

*partes* proceedings, which means that VPI or other defendants can re-litigate any and all prior art combinations, even if they failed in the USPTO." (Id. at 9-10 (citing United Pet Group, Inc. v. MiracleCorp Prods., No. 4:12CV00440AGF, 2012 U.S. Dist. LEXIS 88926, at *6-*7 (E.D. Mo. June 27, 2012)).)

USCO's argument is unavailing and runs counter to the weight of authority on the issue.  Given that reexamination is granted as to multiple claims, the potential for simplification is substantial.  See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc., No. 4:08CV589, 2010 WL 3239001, at *3 (N.D. Ohio Aug. 16, 2010) ("As courts in the Sixth Circuit have noted, it is statistically unlikely that, where multiple claims are involved, all of the claims presented will survive reexamination unchanged.").  In the instant case, the PTO instituted reexamination of claims 1-7, 9-10, 12-13, and 15 of the '267 patent.  (ECF No. 89-2 at PageID 2624.)  Amendment of of these claims could impact the litigation presently before the Court, and a "majority of patents which have been reexamined have either had all claims canceled or changes made to the claims." DSW Inc. v. Shoe Show, Inc., No. 1:11 CV 1797, 2012 WL 2994193, at *2 (N.D. Ohio July 20, 2012).

In contrast, the complexities that could arise should the Court not issue a stay of these proceedings are significant. The Federal Circuit has previously "held that a non-final money

judgment of damages for infringement must be set aside where the judgment rested on a patent claim that the PTO later cancelled." ePlus, Inc. v. Lawson Software, Inc., No. 2013-1506, 2015 WL 3772472, at *7 (Fed. Cir. June 18, 2015) (citing Fresenius USA, Inc. v. Baxter International, Inc., 721 F.3d 1330, 1344, 1347 (Fed.Cir.2013)). The Court of Appeals explained in ePlus that cancellation of a patent claim necessitates setting aside all non-final judgments because "'cancelled claims [a]re void ab initio' . . . ." Id. Moreover, even though a district court's judgment may be "final" for the purposes of appeal, it is "not sufficiently final to preclude application of [an] intervening judgment that le[ads] to the cancellation of the [asserted] patent." Id. (internal quotation marks omitted). Instead, "'a final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it.'" Id. (quoting John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922)).

Applying these principles to the instant case, the Court could fully adjudicate the claims against VPI and enter a judgment on the substantive claims, damages, and injunctive relief, only to have that judgment set aside by the issuance of a reexamination determination in which one of the claims of the '267 patent are cancelled. Additionally, in the case of a

modified claim, it is likely that the related infringement claims would have to be relitigated in their entirety.

Furthermore, the fact that the defendants in the instant case could raise issues and arguments already addressed by the PTO in its reexamination of the '267 patent, highlights the need for a stay of proceedings. Because the PTO applies a different standard for determining validity of a patent's claim than that applied by the district court, the potential for inconsistent validity determinations is significant. See Ethicon, 849 F.2d at 1428-29 ("[I]f the district court determines a patent is not invalid, the PTO should continue its reexamination because, of course, the two forums have different standards of proof for determining invalidity."). USCO does not dispute that if the PTO cancels or modifies claims of the '267 patent and those changes are affirmed by the PTAB and the Federal Circuit, the Court would be bound to consider the '267 patent claims as amended. (See ECF No. 95 at 9-10.) Given this fact, the fact that the PTO granted reexamination based on six separate prior art references, and the high probability that at least one of the claims will be modified or cancelled, the Court finds that a stay of proceedings pending reexamination of the '267 patent will simplify the issues in the instant case.

### 3. Stage of Litigation

VPI argues that this case is in its early stages because 1) "USCO and VPI are still exchanging document discovery;" 2) "[d]iscovery and briefing on claim construction issues has only just begun and no <u>Markman</u> hearing has occurred;" 3) "[n]either party has completed its claim construction briefing;" 4) "each side has yet to conduct depositions on each side's claim construction expert;" 5) "no discovery has yet been obtained from ACE Track nor has it participated in the claim construction process;" and 6) "[n]o dispositive motions have been filed by any party." (ECF No. 89-1 at 8.)

USCO argues that

> [t]he current trial date of June 1, 2016 (only eleven months from now) is far closer than the average duration of an ex parte reexamination of 20+ months, and completion of the trial would allow the parties to move forward with any post-trial motions and/or appeals before the ex parte reexamination is likely to be concluded.

(ECF No. 95 at 10.) USCO further asserts that "the instant case is statistically just as close to disposition as filing, and only ten weeks from the <u>Markman</u> hearing." (<u>Id.</u> at 11.)

The Court agrees with VPI that the current stage of litigation is not so advanced that a stay would be harmful. Similar to the present case, the Court has previously granted stays in cases in which claim construction briefs had already been submitted. See, e.g., <u>One StockDuq Holdings, LLC v.</u>

18

Becton, Dickinson & Co., No. 2:12-CV-03037-JPM-tmp (W.D. Tenn. Nov. 12, 2013), ECF No. 85. Although the parties have submitted opening claim construction briefs and a trial date was set prior to the Bankruptcy Court's order for a stay of proceedings, the claim construction hearing and close of discovery are still months out. (See ECF Nos. 80, 89.) USCO even concedes that the June 1, 2016 trial date "was based on an earlier Markman hearing setting," which was reset due to the Bankruptcy Court's provisional stay of proceedings. (See ECF No. 95 at 11.) Due to the delay caused by the provisional stay of proceedings, the trial date will have to be reset. Accordingly, this case is in its early stages, and this factor weighs in favor of a stay of proceedings.

### 4. Balance of the Factors

Having considered the relevant factors, the Court finds that they weigh in favor of a stay of proceedings in the instant case pending reexamination of the '267 patent.

### B. Extension of ACE Track's Automatic Stay to Include VPI

In addition to a stay of proceedings pending reexamination of the '267 patent, VPI also requests the Court to extend ACE Track's automatic stay under 11 U.S.C. §362(a)(1) to include VPI in the instant case.

### 1. Identity of Interests Between ACE Track and VPI

VPI argues that extension of the automatic stay is appropriate in the instant case because "VPI has asserted indemnification cross-claims against ACE Track." (ECF No. 89-1 at 11.) VPI asserts that "pendency of these indemnification claims 'create[s] an immediate adverse economic consequence for the debtor regardless of whether they are ultimately successful.'" (Id. (quoting In re Jefferson County, 491 B.R. at 296).)

VPI also argues that ACE Track is the real party in interest because "[i]t is ACE Track's manufacturing process that is accused of infringing the '267 Patent, and VPI's liability will hinge on whether ACE Track's process infringes." (Id. at 10.) VPI asserts that similar to the claims against the debtor and solvent defendant in In re Jefferson County, USCO's claims against VPI and ACE Track are "'inextricably interwoven.'" (ECF No. 89-1 at 11 (quoting In re Jefferson County, 491 B.R. at 286-87).)

USCO contends that VPI's cross-claim against ACE Track for indemnity is based on the terms of the Exclusive Dealership Agreement. (ECF No. 95 at 12-13.) USCO asserts that the "agreement requires mandatory arbitration for all such claims." (Id. at 13.) USCO states, "It is USCO's understanding that issue was in fact being arbitrated by ACE and VPI and that prior

to Recognition of ACE's Korean bankruptcy proceeding, the arbitration judge issued a memorandum decision and order on February 9, 2015 that dismissed VPI's claim for indemnity from ACE for patent infringement." (Id.) USCO asserts that VPI has not disclosed the arbitration order "based on a claim of privilege and work product," but "[i]f USCO's understanding on this point is incorrect it can certainly be addressed by VPI in its response and the actual arbitration decision can be provided to the Court by VPI." (Id.)

With regard to VPI's claim that ACE Track is the real party in interest, USCO argues that VPI "is a real party defendant by statute under 35 U.S.C. § 271(g)." (ECF No. 95 at 3.) USCO avers that "VPI's liability stems from direct infringement of importing, offering to sell, and selling the accused products, not performing the patented methods of the '267 Patent." (Id. at 15 (citing § 271(g)).) In support of this averment, USCO cites to Ajinomoto Co. v. ADM Co., 228 F.3d 1338, 1347 (Fed. Cir. 2000) and argues that ACE Track cannot be the real party in interest because patent holders are "not required under section 271(g) to pursue legal action against the party actually practicing the patented method abroad." (See ECF No. 95 at 16.)

The Court of Appeals in A.H. Robins explained that an identity of interests sufficient to warrant extension of an automatic stay to a solvent codefendant exists where the solvent

codefendant "is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." 788 F.2d at 999; see also In re Dow Corning Corp., 86 F.3d 482, 493 (6th Cir. 1996), as amended on denial of reh'g and reh'g en banc (June 3, 1996); In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992). A sufficient identity of interests between the debtor and solvent codefendant is also created when "codefendant liability is 'directly attributable to the debtor.'" In re Dow Corning, 86 F.3d at 493 (quoting A.H. Robins, 788 F.2d at 1004).

As to the question of whether an identity of interests exists between VPI and ACE Track sufficient to warrant extension of the automatic stay based on ACE Track's indemnity of VPI, the Court can find no basis to sustain VPI's position. The Court agrees with USCO that the Exclusive Dealership Agreement requires mandatory arbitration to determine whether VPI is indemnified by ACE Track for patent infringement. (Exclusive Dealership Agreement § 11, ECF No. 1-1.) Moreover, VPI fails to point to an express provision of the Exclusive Dealership Agreement that would establish ACE Track's indemnity for patent infringement. Significantly, VPI does not dispute USCO's assertion that the issue of indemnity for patent infringement was resolved against VPI during arbitration proceedings. (See

ECF No. 96.)  Accordingly, VPI has not established the existence

of "absolute indemnity" by ACE Track for patent infringement.

The question of whether VPI's liability is "directly

attributable" to ACE Track is a closer issue.  On one hand,

VPI's liability for importing, offering to sell, selling, or

using the allegedly infringing products is dependent on VPI's

conduct.  (See § 271(g).)  On the other hand, to establish VPI's

liability, USCO must first prove that ACE Track's manufacturing

process is covered by the '267 patent.  See Ajinomoto, 228 F.3d

at 1348.

The Court agrees with USCO that VPI is a real party in

interest based on the alleged infringement pursuant to § 271(g).

That VPI is a real party defendant does not, by itself, resolve

the issue presently before the Court.  In In re Jefferson

County, the court found that a sufficient identity of interests

between the debtor and solvent defendant existed based in part

on the plaintiff's claim against the solvent defendant for

aiding and abetting the debtor's fraud.  491 B.R. at 286-87.

Similar to the instant case, to succeed on the merits, the

plaintiff in In re Jefferson County was required to prove both

the solvent defendant's conduct in aiding and abetting and the

debtor's fraud.  (Id.)  Despite the fact that the plaintiff did

not pursue a claim for fraud against the debtor in In re

Jefferson County, the court found an identity of interests

existed between the debtor and the solvent defendant. (Id.)
Although the facts in In re Jefferson County differ from those
in the present case in that the solvent defendant was
indemnified by the debtor, the Court finds the discussion of the
underlying fraud violation to be relevant to and instructive of
the instant analysis. USCO simply cannot escape the fact that
in order to prevail against VPI, it must prove that ACE Track's
manufacturing process is covered by the '267 patent's claims.
This requirement under § 271(g) is tantamount to proving that
ACE Track's manufacturing process infringes the '267 patent if
it were performed within the patent's regional scope. These
circumstances are sufficiently analogous to those in In re
Jefferson County to support a finding that VPI's liability is
"directly attributable" to ACE Track.

Accordingly, the Court finds that an identity of interests
exists between VPI and ACE Track. The Court further finds that
an extension of the automatic stay to include VPI in the instant
proceedings is appropriate based on these grounds.

### 2.    Substantial Burden of Discovery on ACE Track

VPI argues that failure to extend the automatic stay will
create a substantial burden on ACE Track because "[b]oth USCO
and VPI will need extensive discovery about ACE Track's
manufacturing process." (See ECF no. 89-1 at 12.) VPI asserts
that "[t]he discovery will likely include production of

documents and electronically-stored information as well as
depositions of corporate representatives and employees." (Id.)
VPI further asserts that the scope of discovery with regard to
ACE Track goes beyond merely establishing ACE Track's
manufacturing process, and includes

> many related issues, such as when the process began,
> what alternatives were considered or exist, what the
> "state of the art" was when ACE Track began the
> process, what alternatives were known in the industry,
> whether there is consumer demand for the process used,
> what benefits the process offers over the
> alternatives, whether ACE Track knew about USCO's
> patent, and what ACE Track reassured VPI about ACE
> Track's process.

(Id.)

USCO does not argue that proceeding with the instant action
against VPI would not burden ACE Track with discovery
obligations. Instead, USCO argues that "the facts of this case
indicate that issuance of a stay will unnecessarily prolong this
litigation and prejudice USCO." (ECF No. 95 at 12.) USCO
asserts that some discovery from ACE Track will be necessary,
but that the required discovery is appropriate given the
Bankruptcy Court's determination to lift the stay of proceedings
as to VPI and the existence of discovery mechanisms through the
Bankruptcy Court. (See id.) USCO avers that "[t]here is no
reason to believe that the Bankruptcy Court will not allow
discovery that may be necessary in conjunction with this case."
(Id.)

USCO further contends that it will be put at a tactical disadvantage if a stay is granted because the Bankruptcy Court has already authorized ACE Track's participation in discovery in the arbitration proceedings. (Id. at 13.) Because VPI has access to discovery of ACE Track in the arbitration proceedings and USCO does not, USCO argues that a stay of the instant proceedings would "clos[e] the door to discovery by USCO, while VPI will be able to continue its claims against and take discovery from ACE." (Id. at 13-14.)

"[T]he overall purpose of the bankruptcy code [is] to permit the debtor a breathing space during which time he can take stock and formulate a plan without the distraction of other actions." In re Baldwin-United, 57 B.R. 759, 767 (S.D. Ohio 1985); see also In re Penn-Dixie Indus., Inc., 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("'The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors.'" (quoting House Report No. 95-595, 95th Cong., 1st Sess. (1977) 340; Senate Report No. 95-989, 95th Cong., 2d Sess. (1978) 54, U.S. Code Cong. & Admin. News 1978 at 5840)). Consequently, courts may extend the automatic stay to include solvent defendants in circumstances where proceeding against the solvent defendant would substantially burden the debtor. See In re Jefferson County, 491 B.R. at 284; In re Lion Capital, 44 B.R.

at 703; <u>In re Penn-Dixie Industries</u>, 6 B.R. at 836 (finding inter alia that production of customer lists "would result in a not insubstantial expenditure from the Debtor's estate of energy and money away from the Chapter 11 reorganization effort").

Although the potential prejudice to USCO is appreciable given the Bankruptcy Court's approval of discovery in the arbitration proceedings, the issue at hand is whether allowing additional discovery in the instant would impose a substantial burden on ACE Track. It is undisputed that one of the main issues in the instant case, if not the ultimate issue, is whether ACE Track's manufacturing process falls within the scope of the claims of the '267 patent. Discovery of ACE Track's manufacturing process alone would likely impose a substantial burden on ACE Track sufficient to extend the automatic stay. Moreover, the Court agrees with VPI that discovery would likely cover many issues beyond the step-by-step process by which ACE Track manufactures its products. Accordingly, the Court finds that requiring ACE Track to take part in full discovery at this stage would impose a substantial burden on ACE Track.

Additionally, USCO has failed to establish a viable mechanism for proceeding on discovery as to ACE Track. <u>See</u> <u>supra</u> Part III.A.1. Without a clear discovery mechanism in place as to ACE Track, it is difficult to see how this case could proceed on the merits.

Accordingly, the Court finds extension of the automatic stay to be appropriate based on these grounds.

### 3. Preclusive Effect on ACE Track

VPI argues that if the instant proceedings are not stayed, they could have a preclusive effect on ACE Track such that ACE Track would feel compelled to defend against an adverse judgment. (ECF No. 89-1 at 13.) VPI avers that a finding that ACE Track's manufacturing process infringes the '267 patent would have a preclusive effect on ACE Track. (Id.) In support of this argument VPI cites to the cases In re W.R. GrACE & Co., 115 F. App'x 565, 570 (3d Cir. 2004) and In re Jefferson County, 491 B.R. at 294-95 and asserts that "[t]he potential preclusive effect need not rise to the level of collateral estoppel." (ECF No. 89-1 at 13.)

USCO does not directly address the issue of what, if any, preclusive effect a finding that ACE Track's manufacturing process is covered by the '267 patent would have given the imposition of the automatic stay as to ACE Track.

Bearing in mind that the overall purpose of § 362(a) is to protect the debtor from being overburdened by litigation external to the bankruptcy proceedings, the potential for preclusion of the debtor on a claim or issue in a case is substantial grounds for granting a stay of proceedings. See In re Jefferson Cnty., Ala., 491 B.R. at 293 (citing In re Lomas

28

Fin. Corp., 117 B.R. 64, 67 (S.D.N.Y. 1990); In re Lion Capital,

44 B.R. at 702-04).  "To the extent that a case turns on general

principles of claim preclusion, as opposed to a rule of law

having special application to patent cases, [the Court of

Appeals for the Federal Circuit] applies the law of the regional

circuit in which the district court sits . . . ."  Acumed LLC v.

Stryker Corp., 525 F.3d 1319, 1323 (Fed. Cir. 2008).  Regional

circuit law is also applied "to the general procedural question

of whether issue preclusion applies."  Soverain Software LLC v.

Victoria's Secret Direct Brand Mgmt., LLC, 778 F.3d 1311, 1314

(Fed. Cir. 2015).

"Under res judicata, a final judgment on the merits of an

action precludes the parties or their privies from relitigating

issues that were or could have been raised in that action."

Allen v. McCurry, 449 U.S. 90, 94  (1980).  The elements for res

judicata are as follows:

> (1) a final decision on the merits by a court of
> competent jurisdiction; (2) a subsequent action
> between the same parties or their privies; (3) an
> issue in the subsequent action which was litigated or
> which should have been litigated in the prior action;
> and (4) an identity of the causes of action.

In re Alfes, 709 F.3d 631, 638 (6th Cir. 2013) (internal

quotation marks omitted).  Similarly, under Sixth Circuit

precedent, there are four elements to establish a claim for

issue preclusion:

> (1) the precise issue raised in the present case must
> have been raised and actually litigated in the prior
> proceeding; (2) determination of the issue must have
> been necessary to the outcome of the prior proceeding;
> (3) the prior proceeding must have resulted in a final
> judgment on the merits; and (4) the party against whom
> estoppel is sought must have had a full and fair
> opportunity to litigate the issue in the prior
> proceeding.

Schreiber v. Philips Display Components Co., 580 F.3d 355, 367

(6th Cir. 2009) (internal quotation marks omitted).

Under traditional theories, for preclusion to be effective, the party seeking preclusion must establish either 1) the existence of "a subsequent action between the same parties or their privies" (claim preclusion), In re Alfes, 709 F.3d at 638; or 2) that "the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding" (issue preclusion), Schreiber, 580 F.3d at 367. Neither of these elements can be established with regard to ACE Track for the simple reason that these proceedings are stayed as to ACE Track. A final judgment could not be entered against ACE Track until the automatic stay is lifted and the claims against ACE Track are fully adjudicated. Moreover, a judgment as to USCO's claims against VPI would not be binding on ACE Track because ACE Track would not have had an opportunity to fully litigate the issues raised in those claims. Accordingly, the traditional preclusion theories do not provide a basis for extending the automatic stay in the instant case.

### 4. Customer Suit Exception

VPI argues that the automatic stay should be extended because the customer suit exception applies to this case. (See ECF No. 89-1 at 14-16.) VPI contends that USCO's claims for infringement against ACE Track should take precedent over the claims against VPI. (Id. at 14-15.) VPI asserts that "[i]t is [ACE Track's] manufacturing process that is accused of infringing the '267 Patent," and "VPI has 'little to nothing' to offer about the manufacturing process, yet it might be forced into the position of having to show that ACE Track's process does not infringe." (Id. at 15.)

USCO argues that the customer suit exception does not apply in the instant case. USCO asserts that the customer suit exception applies to multiple actions filed in more than one federal court and "does not apply in a case where the manufacturer party and downstream party are both named parties in the same action." (ECF No. 95 at 15.)

The Court agrees with USCO that strictly applied, the customer suit exception does not apply to the circumstances in this case, where a single cause of action has been asserted. See In re Nintendo of Am., Inc., 756 F.3d 1363, 1365-66 (Fed. Cir. 2014) (explaining the applicable circumstances as follows: "When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an

action of noninfringement or patent invalidity, the suit by the
manufacturer generally take[s] precedence."); Tegic Commc'ns
Corp. v. Bd. of Regents of Univ. of Texas Sys., 458 F.3d 1335,
1343 (Fed. Cir. 2006) ("The customer suit exception is an
exception to the general rule that favors the forum of the
first-filed action, . . . but does not override the immunity
provided by the Eleventh Amendment.").  The Federal Circuit has,
however, found it appropriate to apply the principles of the
customer suit exception in analogous circumstances.  In In re
Nintendo of America, the Court of Appeals explained that the
"customer-suit exception to the first-to-file rule exists to
avoid, if possible, imposing the burdens of trial on the
customer, for it is the manufacturer who is generally the true
defendant in the dispute."  756 F.3d at 1365 (internal quotation
marks omitted).  The Court of Appeals has further opined that
"the guiding principles in the customer suit exception cases are
efficiency and judicial economy."  Tegic Communications, 458
F.3d at 1343.

    In In re Nintendo of America, the Court of Appeals found
that "[w]hile the circumstances of this case differ from those
of the customer-suit exception, we agree with the district court
that the same general principles govern in that Nintendo is the
true defendant."  756 F.3d at 1365.  The Court of Appeals then
applied those general principles in determining that severance

and transfer of that case would resolve the claims "more efficiently and conveniently."  Id. at 1366.

The same concerns of efficiency and judicial economy predominate in the instant case precisely because ACE Track will not be bound by the results of the instant proceedings as to VPI.  Once the automatic stay is lifted, ACE Track will have the opportunity to assert claim construction arguments, noninfringement and invalidity contentions, and other factual assertions relevant to its defense.  Moreover, there is an appreciable risk of inconsistent judgments should the Court enter a final judgment as to VPI without the benefit of ACE Track's involvement in the case.  Similar to the circumstances in In re Nintendo of America, ACE Track is the "true defendant" in this case because VPI is ACE Track's customer and VPI's infringement can only be established if ACE Track's manufacturing process is found to be covered by the '267 patent. The potential expenditure that USCO and ACE Track would be subject to by relitigating issues that were already litigated as to VPI is substantial.

Accordingly, the principles of the customer suit exception favor a stay of proceedings in the instant case pending conclusion of ACE Track's bankruptcy proceedings.

## IV. CONCLUSION

For the foregoing reasons, Defendant ValuePart, Inc.'s Motion to Stay the Case (ECF No. 89) is GRANTED.  It is hereby ORDERED that all proceedings in this case are stayed until the latter of 1) a final determination of the reexamination of the '267 patent; or 2) lifting of the automatic stay of proceedings as to ACE Track.

**IT IS SO ORDERED,** this 29th day of July, 2015.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE